1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

11

12

13

14

MARTHA MORITZ,

               Plaintiff,

             v.

DANIEL N. GORDON, P.C., et al.,

               Defendants.

CASE NO. C11-1019JLR

ORDER ON CROSS-MOTIONS
FOR SUMMARY JUDGMENT

15

## I.    INTRODUCTION

16       Before the court are:  (1) Defendants Daniel N. Gordon, P.C. ("DNG") and Daniel

17 N. Gordon's motion for summary (Def. Mot. (Dkt. # 42)); and (2) Plaintiff Martha

18 Moritz's motion for partial summary judgment (Moritz Mot. (Dkt. # 45)).  After the

19 summary judgment motions were filed, Ms. Moritz filed a notice of voluntary withdrawal

20 of her claims against Defendants under 15 U.S.C. §§ 1692b and 1692c.  (Not. of

21 Withdrawal (Dkt. # 59).)  The court thus DENIES as MOOT the portions of Defendants'

22 motion for summary judgment addressing these claims.  With respect to the remaining

1    issues raised in the parties' briefing, the court has considered the submissions of the

2    parties, the balance of the record, and the relevant law, and deemed oral argument

3    unnecessary.[1]  Thus being fully apprised, the court GRANTS in part and DENIES in part

4    Defendants' motion (Dkt. # 42) and GRANTS in part and DENIES in part Ms. Moritz's

5    motion (Dkt. # 45).

6        Also pending before the court is Ms. Moritz's motion for leave to file

7    supplemental authority (Dkt. # 60) in support of her motion for partial summary

8    judgment (Dkt. # 45) and in opposition to Defendants Daniel N. Gordon, P.C. ("DNG")

9    and Daniel N. Gordon's motion for summary judgment (Dkt. # 42).  Ms. Moritz seeks to

10   file a contract produced by Defendants in discovery after the parties had submitted their

11   summary judgment motions.  Ms. Moritz contends that the contract is relevant to her

12   claim that DNG committed an unfair or deceptive act or practice in violation of the

13   Washington Consumer Protection Act, RCW ch. 19.16.  In light of the court's rulings

14   herein, the court DENIES AS MOOT Ms. Moritz's motion for leave (Dkt. # 60).

15

16   _____

17       [1] Defendants have requested oral argument with respect to both motions.  Federal Rule of
     Civil Procedure 56 does not require a hearing where the opposing party does not request it.  *See,*

18   *e.g.*, *Demarest v. United States*, 718 F.2d 964, 968 (9th Cir. 1983).  Moreover, oral argument is
     not necessary where the non-moving party suffers no prejudice.  *Houston v. Bryan*, 725 F.2d

19   516, 517-18 (9th Cir. 1984).  "When a party has [had] an adequate opportunity to provide the
     trial court with evidence and a memorandum of law, there is no prejudice [in a refusal to grant
     oral argument]."  *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998) (quoting *Lake at Las*

20   *Vegas Investors Grp., Inc. v. Pac. Malibu Dev. Corp.,* 933 F.2d 724, 729 (9th Cir. 1991))
     (alterations in *Partridge* ).  "In other words, a district court can decide the issue without oral

21   argument if the parties can submit their papers to the court."  *Id.*  Here, the issues have been
     thoroughly briefed by the parties and oral argument would not be of assistance to the court.

22   Accordingly, the court denies Defendants' request for oral argument.

## II.    BACKGROUND

This case involves Ms. Moritz's contacts with DNG while DNG attempted to collect a debt that Ms. Moritz owed its client, CACV of Colorado, LLC ("CACV").  On or about February 27, 2006, DNG mailed certain documents to the Washington State District Court for Whatcom County for filing, including a complaint on behalf of CACV against Ms. Moritz.  (1st Radbil Decl. (Dkt. # 58) Ex. A at 2 (2/27/06 Cover Letter).) The cover letter identified DNG as "Attorney and Counselor at Law."  (*Id.*)  On or about March 13, 2006, the Whatcom County District Court filed CACV's complaint. (Aylworth Decl. (Dkt. # 44) Ex. 1 (State Ct. Compl.).)  The complaint alleged that Ms. Moritz was indebted to CACV in the amount of $3,070.67 from January 12, 2006, plus interest at a rate of 12% per annum, and sought to recover this debt.  (*Id.* Ex. 1 ¶ 4.) Below Mr. Gordon's signature on behalf of DNG, the complaint stated in bold font: "This Communication is from a Debt Collector."  (*Id.* Ex. 1 at 3.)

In April 2006, Ms. Moritz contacted DNG, and the parties set up a payment plan. (Aylworth Decl. ¶ 7; 1st Kraemer Decl. (Dkt. # 43) Ex. 1 (Moritz Dep.) at 17:7-11, 20:15-25.)  Ms. Moritz, however, failed to make all of the necessary payments. (Aylworth Decl. ¶ 7.)  On January 15, 2007, DNG mailed a motion and declaration for default judgment, judgment, and supporting documents to the Whatcom County District Court for filing.  (1st Radbil Decl. Ex. A at 3 (1/15/07 Cover Letter).)  On January 29, 2007, the state court entered a default judgment against Ms. Moritz in the total amount of $3,979.12, plus interest at the rate of 12% per annum.  (Aylworth Decl. Ex. 2 (Mot. for Default Judgment and Judgment).)

1    On November 15, 2007, DNG mailed a writ of garnishment and a copy of the state

2    court judgment to the Whatcom County District Court for filing.  (1st Radbil Decl. Ex. A

3    at 4 (11/15/07 Cover Letter).)  In July 2008, DNG issued a garnishment to Talasaea

4    Consultants, Inc. ("Talasaea"), but the company answered that Ms. Moritz had not been

5    employed there since May 23, 2008.  (Aylworth Decl. ¶ 9, Ex. 3 (Ans. to Garnishment).)

6    On March 18, 2009, DNG mailed Ms. Moritz a letter confirming that she owed

7    $5,619.43 and agreeing to accept monthly payments of $50.00.  (2d Radbil Decl. (Dkt. #

8    46) Ex. 9 (3/18/09 Letter); *see also* 1st Kraemer Decl. Ex. 1 (Moritz Dep.) at 37:21-22.)

9    Ms. Moritz, however, did not make monthly payments as agreed.  (Aylworth Decl. ¶ 10.)

10    On July 1, 2010, Ms. Moritz spoke with DNG about the possibility of a new

11    payment plan and told DNG that she was employed at Talasaea.  (*Id.* ¶ 11.)  That same

12    day, DNG contacted Talasaea to verify Ms. Moritz's employment in order to issue

13    garnishment.  (*Id.* ¶ 12.)  Also on July 1, 2010, DNG sent Ms. Moritz a letter confirming

14    the payment plan, as well as a $6,384.14 balance on Ms. Moritz's debt owed to CACV.

15    (2d Radbil Decl. Ex. 10 (7/1/10 Letter).)

16    On August 30, 2010, DNG employee Tasha Pierce called Ms. Moritz and left a

17    voicemail message asking for a return call.  (2d Radbil Decl. Ex. 7 (DNG Collection

18    Notes) at GORD00040.)  That same day, DNG sent Ms. Moritz a letter in which it agreed

19    to a third payment plan that Ms. Moritz had set up.  (*Id.* Ex. 11 (8/30/10 Letter);

20    Aylworth Decl. ¶ 13.)  Ms. Moritz did not make timely payments.  (Aylworth Decl. ¶ 13.)

21    On November 1, 2010, Ms. Pierce called and left a second voicemail message for

22    Ms. Moritz asking Ms. Moritz to call DNG.  (2d Radbil Decl. Ex. 7 at GORD00043.)

ORDER- 4

1    Ms. Pierce left similar voicemail messages for Ms. Moritz on November 29, 2010, and

2    November 30, 2010.  (*Id.*)

3         In December 2010, Ms. Moritz advised DNG that she was attempting to take out a

4    loan in order to settle the debt to CACV.  (Aylworth Decl. ¶ 14; 1st Kraemer Decl. Ex. 1

5    (Moritz Dep.) at 43:8-15.)  On December 29, 2010, DNG sent a letter to Ms. Moritz

6    confirming that it would accept $3,006.05 in full settlement of the debt owed to CACV.

7    (2d Radbil Decl. Ex. 12 (12/29/10 Letter).)  On both December 29, 2010, and December

8    30, 2010, Ms. Pierce left voicemail messages for Ms. Moritz asking for a return call.  (*Id.*

9    Ex. 7 at GORD00045-46.)

10        In January 2011, Ms. Pierce left four voicemail messages for Ms. Moritz asking

11   Ms. Moritz to contact DNG.  (*Id.* Ex. 7 at GORD00047-48.)  On January 10, 2011, DNG

12   mailed Ms. Moritz a letter confirming that it had not received payment and stating that

13   the total amount due was $5,900.54.  (*Id.* Ex. 13 (1/10/11 Letter).)  On January 17, 2011,

14   DNG mailed Ms. Moritz another letter in which it agreed to accept $4,581.05 in full

15   settlement if DNG received payment by January 31, 2011.  (*Id.* Ex. 14 (1/17/11 Letter).)

16   Also on January 17, 2011, Ms. Moritz sent DNG a letter disputing the validity of her debt

17   pursuant to the Fair Debt Collection Practices Act.  (Moritz Aff. (Dkt. # 47) Ex. 1 (Moritz

18   Letter).)  When the loan Ms. Moritz was pursuing fell through, DNG moved forward with

19   garnishing Talasaea.  (Aylworth Decl. ¶¶ 14, 15.)  Ultimately, Ms. Moritz satisfied the

20   state court judgment against her.  (2d Radbil Decl. Ex. 3 (Aylworth Dep.) at 134:16-

21   135:1.)

22

1      On June 17, 2011, Ms. Moritz initiated the instant action against Defendants.

2 (Compl. (Dkt. # 1).)  In her amended complaint, she alleges that Defendants violated the

3 Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and the

4 Washington Consumer Protection Act ("CPA"), RCW ch. 19.86.  (Am. Compl. (Dkt. #

5 28) ¶ 1.)  Ms. Moritz's CPA claim relies on her assertion that DNG violated the

6 Washington Collection Agency Act ("WCAA"), RCW ch. 19.16.  (*Id.*)

7                     **III.    ANALYSIS**

8 **A. Summary Judgment Standard**

9      Summary judgment is appropriate if the evidence, when viewed in the light most

10 favorable to the non-moving party, demonstrates "that there is no genuine dispute as to

11 any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ.

12 P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. Cnty. of L.A.*, 477

13 F.3d 652, 658 (9th Cir. 2007).  The moving party bears the initial burden of showing

14 there is no genuine issue of material fact and that he or she is entitled to prevail as a

15 matter of law.  *Celotex*, 477 U.S. at 323.  "Where non-moving party bears the burden of

16 proof at trial, the moving party need only prove that there is an absence of evidence to

17 support the non-moving party's case."  *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387

18 (9th Cir. 2010) (international citations omitted).  If the moving party meets his or her

19 burden, then the non-moving party "must make a showing sufficient to establish a

20 genuine dispute of material fact regarding the existence of the essential elements of his

21 case that he must prove at trial" in order to withstand summary judgment.  *Galen*, 477

22 F.3d at 658.  In adjudicating cross-motions for summary judgment, the court "evaluate[s]

1  each motion separately, giving the nonmoving party in each instance the benefit of all

2  reasonable inferences." *ACLU of Nevada v. City of Las Vegas*, 466 F.3d 784, 790-91 (9th

3  Cir. 2006) (citations omitted); *see also Friends of Columbia Gorge, Inc. v. Schafer*, 624

4  F. Supp. 2d 1253, 1263 (D. Or. 2008).

5  **B. Defendants' Motion for Summary Judgment**

6        **1.  Fair Debt Collection Practices Act Claims**

7        Ms. Moritz's federal claims are based on Defendants' alleged violations of the

8  FDCPA.  (*See generally* Am. Compl.)  The FDCPA comprehensively regulates the

9  conduct of debt collectors, imposing affirmative obligations and broadly prohibiting

10  abusive practices.  *Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1060-61 (9th Cir.

11  2011).  Whether conduct violates the FDCPA requires an objective analysis that takes

12  into account the "the least sophisticated debtor" standard.  *See Donohue v. Quick Collect,*

13  *Inc.*, 592 F.3d 1027, 1030 (9th Cir. 2010); *Guerrero v. RJM Acquisitions LLC*, 499 F.3d

14  926, 934 (9th Cir. 2007).  The FDCPA is a strict liability statute, which "should be

15  construed liberally in favor of the consumer."  *Clark v. Capital Credit & Collection*

16  *Servs., Inc.*, 460 F.3d 1162, 1175-76 (9th Cir. 2006) (quotation omitted).

17        For the purposes of the FDCPA, a consumer is any person obligated or allegedly

18  obligated to pay a debt.  15 U.S.C. § 1692a(3).  Ms. Moritz qualifies as a consumer

19  because it is undisputed that she owed a debt.  (*See* Am. Compl. ¶ 18.)  A debt collector,

20  for the purposes of the FDCPA, is any person "who uses any instrumentality of interstate

21  state commerce or the mails in any business the principal purpose of which is the

22  collection of any debts, or who regularly collects or attempts to collect, directly or

1  indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. §

2  1692a(6).  The parties do not dispute that DNG is a debt collector for the purposes of the

3  FDCPA, but they dispute whether Mr. Gordon similarly qualifies.  The court begins with

4  Ms. Moritz's FDCPA claims against DNG and then turns to her claims against Mr.

5  Gordon.[2]

6  <center>**a.   15 U.S.C. § 1692d(6) Claim Against DNG**</center>

7          Section 1692d of the FDCPA prohibits a debt collector from engaging "in any

8  conduct the natural consequence of which is to harass, oppress, or abuse any person in

9  connection with the collection of a debt."  15 U.S.C. § 1692d.  In addition to this general

10 ban on harassing or abusive conduct, § 1692d provides a non-exclusive list of six

11 prohibited acts, including "the placement of telephone calls without meaningful

12 disclosure of the caller's identity."  15 U.S.C. § 1692d(6).  The Ninth Circuit has not yet

13 addressed what is required to satisfy the "meaningful disclosure" element of § 1692d(6),

14 however district courts in the Circuit increasingly agree that meaningful disclosure

15 "requires that the caller must state his or her name and capacity, and disclose enough

16 information so as not to mislead the recipient as to the purpose of the call."

17 *Hosseinzadeh v. M.R.S. Assoc., Inc.*, 387 F. Supp. 2d 1104, 1112 (C.D. Cal. 2005); *see*

18 *also Costa v. Nat'l Action Fin. Serv.*, 634 F. Supp. 2d 1069, 1074 (E.D. Cal. 2007);

19 *Gordon v. Credit Bureau of Lancaster & Palmdale*, No. CV 11-2272(PSG) (PJWx), 2012

20 WL 183668, at *2 (C.D. Cal. 2012 Apr. 20, 2012) (adopting the standard set forth in

21 _____

22          [2] The court has considered only evidence of alleged violations that occurred within the
   FDCPA's one-year statute of limitations.  *See* 15 U.S.C. § 1692k(d).

1  *Hosseinzadeh*); *Koby v. ARS Nat. Serv., Inc.*, No. CIV 09CV0780 JAHJMA, 2010 WL

2  1438763, at *3 (S.D. Cal. Mar. 29, 2010) (noting increasing consensus).  Because these

3  district courts' understanding of "meaningful disclosure" aligns with the remedial nature

4  of the FDCPA, the court adopts their understanding here.

5       DNG argues that it is entitled to summary judgment on Ms. Moritz's § 1692d(6)

6  claim because its employees made the requisite meaningful disclosures during their

7  communications with Ms. Moritz.  (Def. Mot. at 7-8.)  Ms. Pierce, the DNG employee

8  Ms. Moritz contends left the improper messages, testified that she left a standard

9  voicemail message that said:  "This message is for Martha Moritz.  This is Tasha Pierce

10 calling from the debt collection law firm of Daniel N. Gordon, PC.  Please return my

11 phone call at 1 (800) 311-8566."[3]  (1st Kraemer Decl. Ex 2 (Pierce Dep.) at 29:14-30:1.)

12 She also testified that this standard voicemail message has not changed since the

13 beginning of her employment.  (*Id.* Ex. 2 at 29:24-30:1.)  Matthew Aylworth, an attorney

14 with DNG, similarly testified that that DNG employees are instructed to leave voicemail

15 messages that say:  "This is [employee's name] from the debt collection law firm of

16 Daniel N. Gordon, P.C.  Please call me back."  (2d Radbil Decl. Ex. 3 (Aylworth Dep.) at

17 106:5-8.)  Based on the foregoing evidence, a reasonable jury could conclude that Ms.

18 Pierce left DNG's standard voicemail message on Ms. Moritz's answering machine and

19

20      [3] Ms. Moritz argues that Ms. Pierce was not certain of her testimony and that, contrary to

21 DNG's argument, the evidence does not incontrovertibly demonstrate that the message left by DNG provided the requisite disclosures.  (Resp. to Def. Mot. (Dkt. # 53) at 3.)  The court,

22 however, is satisfied that Ms. Pierce's testimony, if believed, could support a jury verdict in DNG's favor.

ORDER- 9

1    that the message meets the meaningful disclosure requirement of § 1692d(6); it provided

2    Ms. Moritz with the name of the caller and would have informed a reasonable recipient of

3    the message about the nature of the communication.  As such, the court concludes that

4    DNG has satisfied its initial burden on summary judgment of presenting evidence

5    establishing its entitlement to judgment as a matter of law.

6           The burden thus shifts to Ms. Moritz to create a genuine issue of material fact for

7    trial.  To do so, Ms. Moritz presents her own testimony that the voicemail messages left

8    by Ms. Pierce did not disclose that the calls were from a debt collector but only stated:

9    "Hi, this is Tasha Pierce from Attorney Daniel Gordon's office.  I need a call back at 1-

10   800."  (2d Radbil Decl. Ex. 5 (Moritz Dep.) at 80:18-21.)  Ms. Moritz also submits

11   evidence that DNG's policy on voicemail messages instructed employees to disclose only

12   the employee's name and phone number (*id.* Ex. 8 (DNG Policy)), and that DNG

13   required its employees to leave voicemail messages consistent with its policies and

14   procedures (Ans. (Dkt. # 30) ¶ 46).[4]  Ms. Moritz has also submitted the testimony of

15   Brandy Nelson, a former manager with DNG, that DNG employees were instructed to

16   leave a standard voicemail message that did not indicate that the call was from a debt

17   collector.[5]  (2d Radbil Decl. Ex. 1 (Nelson Dep.) at 143:6-144:24.)  Rather, according to

18   _____

19

20   [4] DNG argues that Ms. Nelson testified that some of the information on the policy
     document DNG produced was outdated.  (Resp. to Moritz Mot. (Dkt. # 51) at 4.)  Nevertheless,
     Ms. Nelson's testimony does not specifically indicate that the policy regarding the contents of

21   the voicemail message was outdated.

22   [5] DNG argues that Ms. Nelson's testimony on this point is contradicted by her testimony
     that DNG's policy on verbal communications with a consumer is to disclose that the call is from

Ms. Nelson, DNG employees "were instructed to only say their name and where they were calling and a call-back number." (*Id.* Ex. 1 at 144:22-24.) Ms. Nelson testified that typically the DNG collectors would say: "Hi this is [employee's name] calling from Daniel N. Gordon, PC.  Please give me a call back at this 800 number." (*Id.* Ex. 1 at 143:6-10.)

Finally, Ms. Moritz relies on DNG's business records to support her contention that Ms. Pierce did not make the required disclosures in her voicemail messages.  (Resp. to Def. Mot. (Dkt. # 53) at 5-7.)  Ms. Pierce testified that she is required to enter very detailed notes on every communication she has with a consumer into DNG's History Notes software.  (1st Kraemer Decl. Ex. 2 (Pierce Dep.) at 21:16-23:12.)  She also testified that she is required to note whenever she provides the consumer with a "mini-Miranda" warning, which is DNG's method of informing the customer that an employee is calling about collecting a debt.[6]  (*Id.*)  Some of Ms. Pierce's History Notes entries related to Ms. Moritz's account indicate that she a "mini-Miranda," however, many others do not indicate that Ms. Pierce provided a mini-Miranda warning to Ms. Moritz.  (*Compare* 2d Radbil Decl. Ex. 7 at GORD00044-45 (History Notes with no notation that mini-Miranda was provided), *with* 3d Radbil Decl. (Dkt. # 54) Ex. A at GORD00035-36

---

a debt collection agency.  (Resp. to Moritz Mot. at 6; 2d Kraemer Decl. (Dkt. # 52) Ex. 3 (Nelson Dep. in *McLain v. Daniel N. Gordon, PC*) at 65:7-11.)  Because the court must view the evidence in the light most favorable to Ms. Moritz when considering DNG's motion for summary judgment, any apparent contradiction in Ms. Nelson's testimony does not warrant granting summary judgment in Defendants' favor.

[6] Ms. Nelson similarly testified that a DNG employee should make a notation when he or she provides a consumer a mini-Miranda warning.  (3d Radbil Decl. (Dkt. # 54) Ex. B (Nelson Dep.) at 103:16-23.)

1    (History Notes with notation that the mini-Miranda was provided).)  Viewing the

2    evidence summarized above in the light most favorable to Ms. Moritz, the court

3    concludes that there is a genuine issue of material fact regarding the contents of Ms.

4    Pierce's voicemail messages to Ms. Moritz and whether the voicemail messages

5    complied with the meaningful disclosure requirement of § 1692d(6).

6            DNG nevertheless argues that even if Ms. Pierce left voicemail messages that did

7    not comply with § 1692d(6)'s meaningful disclosure requirement, it is entitled to

8    summary judgment based on the bona fide error defense.  (Reply to Def. Mot. (Dkt. # 56)

9    at 4.)  "Although the FDCPA is a strict liability statute, it excepts from liability those debt

10   collectors who satisfy the 'narrow' bona fide error defense."  *McCollough v. Johnson,*

11   *Rodenburg & Lauinger, LLC*, 637 F.3d 939, 948 (9th Cir. 2011) (citation omitted).  The

12   defense provides:

13           A debt collector may not be held liable in any action brought under [the
             FDCPA] if the debt collector shows by a preponderance of evidence that
14           the violation was not intentional and resulted from a bona fide error
             notwithstanding the maintenance of procedures reasonably adapted to avoid
15           any such error.

16   15 U.S.C. § 1692k(c).  "The bona fide error defense is an affirmative defense, for which

17   the debt collector has the burden of proof."  *McCollough*, 637 F.3d at 948 (citation

18   omitted).  "Thus, to qualify for the bona fide error defense, the defendant must prove that

19   (1) it violated the FDCPA unintentionally; (2) the violation resulted from a bona fide

20   error; and (3) it maintained procedures reasonably adapted to avoid the violation."  *Id.*

21           DNG argues that the bona fide error defense applies because any messages left in

22   the manner claimed by Ms. Moritz were contradictory to policy and training.  (Reply to

ORDER- 12

1   Def. Mot. at 4.)  As discussed above, however, there are genuine issues of material fact

2   regarding DNG's policies regarding the content of voicemail messages.  Additionally,

3   there is no evidence in the record regarding Ms. Pierce's intent.  Summary judgment,

4   therefore, is improper based on the bona fide error defense.  For the foregoing reasons,

5   the court denies DNG's motion for summary judgment with respect to Ms. Moritz's 15

6   U.S.C. § 1692d(6) claim.

7                    **b.  15 U.S.C. § 1692e(11) Claim Against DNG**

8          Section 1692e of the FDCPA prohibits a debt collector from using "any false,

9   deceptive, or misleading representation or means in connection with the collection of any

10  debt."  15 U.S.C. § 1692e.  The statute provides a non-exhaustive list of conduct that is a

11  violation of § 1692e, including:

12          The failure to disclose in the initial written communication with the
            consumer and, in addition, if the initial communication with the consumer
13          is oral, in that initial oral communication, that the debt collector is
            attempting to collect a debt and that any information obtained will be used
14          for that purpose, and the failure to disclose in subsequent communications
            that the communication is from a debt collector, except that this paragraph
15          shall not apply to a formal pleading made in connection with a legal action.

16  15 U.S.C. § 1692e(11).  Most courts that have considered the issue have concluded that

17  "voicemails are communications that must conform to the disclosure requirements of

18  section 1692e(11)."  *Lensch v. Armada Corp.*, 795 F. Supp. 2d 1180, 1189 (W.D. Wash.

19  2011) (collecting cases, including those within the Ninth Circuit).

20          DNG contends that it is entitled to summary judgment on Ms. Moritz's §

21  1692e(11) claim for the same reasons it asserted with respect to Ms. Moritz's § 1692d(6)

22  claim.  (*See* Def. Mot. at 7-8; Reply to Def. Mot. at 2-5.)  Ms. Moritz also asserts the

1   same arguments and evidence regarding her § 1692e(11) claim as she did on her §

2   1692d(6) claim.  (*See* Resp. to Def. Mot. at 2-7.)  For the reasons explained above, there

3   are genuine issues of material fact regarding the contents of the voicemail messages Ms.

4   Pierce left for Ms. Moritz, particularly whether she disclosed that the call was from a debt

5   collector.  Accordingly, the court denies Defendants' motion for summary judgment with

6   respect to Ms. Moritz's 15 U.S.C. § 1692e(11) claim.

7               **c.   15 U.S.C. § 1692f Claim Against DNG**

8        Section 1692f prohibits a debt collector from "us[ing] unfair or unconscionable

9   means to collect any debt."  15 U.S.C. § 1692f.  Section 1692f enumerates eight specific

10  violations that are not intended to limit the applicability of the statute, *id.*, none of which

11  are implicated in this matter.  Rather, Ms. Moritz's complaint alleges that DNG violated

12  § 1692f's general prohibition of "unfair or unconscionable means to collect any debt" by

13  collecting Ms. Moritz's debt "without being licensed pursuant to Washington law, thus

14  avoiding review by state authorities."  (Am. Compl. ¶ 90.)  There is no dispute that DNG

15  is not licensed under Washington law.  (Ans. ¶ 23.)

16       DNG argues that it is entitled to summary judgment because (1) there is no

17  evidence that that DNG was required to be licensed pursuant to Washington law, and (2)

18  violations of state law are not *per se* violations of the FDCPA.  (Def. Mot. at 8.)  For the

19  reasons explained below, the court concludes that, viewing the evidence in Ms. Moritz's

20  favor, no rational jury could find that the alleged violations of Washington law also

21  violated the FDCPA.  For purposes of this discussion, the court assumes the truth of Ms.

22  Moritz's assertions that DNG violated Washington law by acting without a license and by

1    sending debt collection letters to Ms. Moritz that did not itemize the amount of the debt

2    as required by Washington law.  (*See* Resp. to Def. Mot. at 11; Moritz Mot. at 7.)

3            The controlling authority on this issue is *Wade v. Regional Credit Association*, 87

4    F.3d 1098 (9th Cir. 1996).  In *Wade*, the defendant called the debtor and sent her a

5    collection notice without a permit as required by Idaho law.  *Id.* at 1099.  The Ninth

6    Circuit refused to find that the mere violation of the state licensing law constitutes a

7    violation of the FDCPA and held that a debt collection practice in violation of state law is

8    not *per se* a FDCPA violation.  *Id.* at 1100.  Instead, the court analyzed the substance of

9    the allegedly improper communications to determine whether they constituted

10   independent violations of the FDCPA.  *Id.* at 1100.  With respect to § 1692f's prohibition

11   against unfair or unconscionable means of collecting, the court concluded that the "notice

12   was relatively innocuous, and not 'unconscionable' in either a legal or lay sense."  *Id.*

13   The court also declined to follow district courts that had found that collection agencies

14   violated the FDCPA by engaging in collection activities without the required state

15   licenses, finding them "either inapposite or unpersuasive."  *Id.* at 1100-01, 1101 n.3.

16           For example, in disagreeing with the district court's decision in *Gaetano v. Payco*

17   *of Wisconsin, Inc.*, 774 F. Supp. 1404 (D. Conn. 1990), the Ninth Circuit wrote:

18           In *Gaetano*, the court found that the collector's unlicensed actions violated
             that section because the collector "deprived the plaintiff of her right as a
19           consumer debtor residing within the state to have the defendant's
             qualifications as a collection agency reviewed by state authorities."  774 F.
20           Supp. at 1415 n.8.  If Wade was deprived of such a right, her remedy lies in
             Idaho state law, not in Section 1692f of the FDCPA.

21

22

ORDER- 15

1  *Wade*, 87 F.3d at 1100-01.  In short, the *Wade* court did not find any import in the

2  defendant's failure to obtain a license in violation of state law and instead focused on the

3  defendant's actions and whether they violated the FDCPA independent of any state-law

4  violation.  *See Taylor v. Quall*, 471 F. Supp. 2d 1053, 1062 (C.D. Cal. 2007) (citing

5  *Wade* for the proposition that instead of finding a state law violation a *per se* FDCPA

6  violation, "the [c]ourt must determine whether any alleged state-law violation also

7  constitutes a violation of one of the enumerated sections of the FDCPA"); *see also*

8  *Khosroabadi v. N. Shore Agency*, 439 F. Supp. 2d 1118, 1123-25 (S.D. Cal. 2006)).

9          Applying the *Wade* analysis to the instant dispute, the court concludes that any

10  violation of Washington's licensing requirements does not itself establish a violation of

11  the FDCPA.  *See Wade*, 87 F.3d at 1100-01.  Ms. Moritz attempts to distinguish *Wade* on

12  the basis that it interpreted Idaho regulations of collection agencies, which are different

13  from Washington's corresponding regulations.  (Resp. to Def. Mot. at 9.)  There is no

14  indication in the *Wade* opinion, however, that the specific content of the Idaho

15  regulations had any bearing on the court's decision.  As such, the court is not persuaded

16  that *Wade* does not govern here.  Ms. Moritz also asserts that courts "routinely" find

17  violations of state laws that mandate licensure by collection agencies to constitute

18  violations of the FDCPA.  (Resp. to Def. Mot. at 9-10 (citing a number of district court

19  decisions).)  Yet most of the cases Ms. Moritz relies upon are not from the Ninth Circuit,

20  where *Wade* is binding authority, and the only case from within this Circuit was decided

21  before *Wade*.  Moreover, a number of the cases Ms. Moritz cites were discussed in *Wade*

22  and found to be unpersuasive, and Ms. Moritz offers no explanation for why the court

ORDER- 16

1    should follow this authority in light of the *Wade* court's comments.  *See Wade*, 87 F.3d at

2    1100 n.3.  Therefore, the court declines to follow the district court decisions relied upon

3    by Ms. Moritz.

4            Rather, the court must determine whether DNG's actions constitute independent

5    violations of the FDCPA.  *See Wade*, 87 F.3d at 1100-01; *Taylor*, 471 F. Supp. 2d at

6    1062.  Ms. Moritz points to a specific action taken by DNG that may be a violation of

7    Washington law:  failing to itemize the amount of Ms. Moritz's debt in its collection

8    letters to her.  (*See* Resp. to Def. Mot. at 11.)  Ms. Moritz does not assert, however, that

9    such a failure is an independent violation of the FDCPA, and the court has discerned no

10   such violation based on its review of the statute.  *See generally* 15 U.S.C. §§ 1692a-

11   1692g; *see also* 15 U.S.C. § 1692g (setting forth the requirements for the initial written

12   communication with a consumer, which does not include the itemization required by

13   Washington law); *Dunlap v. Credit Protection Ass'n, L.P.*, 419 F.3d 1011, 1012 (9th Cir.

14   2005) (per curiam) (concluding that the notice provisions set forth in 15 U.S.C. § 1692g

15   are sufficient to apprise debtors of their rights).  When viewed from the perspective of the

16   least sophisticated debtor and in the light most favorable to Ms. Moritz, no reasonable

17   jury could conclude that the omission from the letters of the itemized amounts constitutes

18   an unconscionable or unfair attempt to collect a debt under the FDCPA.  Accordingly, the

19   court concludes that DNG is entitled to summary judgment on Ms. Moritz's 15 U.S.C.

20   1692f claim.

21

22

### d.  FDCPA Claims Against Mr. Gordon

The Ninth Circuit has not yet decided the question of whether an individual employee or shareholder, officer, or director of a debt collecting corporation may be held personally liable as a "debt collector" under the FDCPA.  *See Robinson v. Managed Accounts Receivables Corp.*, 654 F. Supp. 2d 1051, 1061 (C.D. Cal 2009); *Schwarm v. Craighead*, 552 F. Supp. 2d 1056, 1073 (E.D. Cal. 2008).  There is a split among persuasive authority.  The Sixth Circuit and the majority of district courts that have considered the issue have concluded that employees can be held personally liable under the FDCPA.  *Robinson*, 654 F. Supp. 2d at 1061 (collecting cases).  On the other hand, the Seventh Circuit has held that employees cannot be held personally liable under the FDCPA unless the plaintiff can pierce the corporate veil.  *Id.*

District courts in the Ninth Circuit have followed the Sixth Circuit's approach.  *See, e.g.*, *Robinson*, 654 F. Supp. 2d at 1061; *Schwarm*, 522 F. Supp. 2d at 1071-73; *Townsend v. Nat'l Arbitration Forum, Inc.*, No. CV 09-9325-VBF(RNBx), 2012 WL 12736, at *12 (C.D. Cal. Jan. 4, 2012); *Smyth v. Merchants Credit Corp.*, No. C11-1879RSL, 2012 WL 588744, at *2-*3 (W.D. Wash. Feb. 22, 2012).  The court agrees with the reasoning in these cases, particularly that articulated in *Schwarm*.  Accordingly, the court concludes that "because the FDCPA imposes personal, not derivative, liability, serving as a shareholder, officer, or director of a debt collecting corporation is not, in itself, sufficient to hold an individual liable as a 'debt collector.'"  *Schwarm*, 552 F. Supp. 2d at 1073.  Rather, the FDCPA "requires that the individual 'regularly collect or attempt to collect, directly or indirectly, debts owed or due or asserted to be owed or due

another." *Id.* (quoting 15 U.S.C. § 1692a(6)) (alterations in *Schwarm*).  Based on this standard, courts have found an individual personally liable if "the individual 1) materially participated in collecting the debt at issue; 2) exercised control over the affairs of the business; 3) was personally involved in the collection of the debt at issue; or 4) was regularly engaged, directly and indirectly, in the collection of debts."  *Id.* (internal quotations and citations omitted).

Mr. Gordon asserts that he cannot be held personally liable under the FDCPA because there is no evidence that he was involved in the collection of Ms. Moritz's debt. (Def. Mot. at 5-8.)  In response, Ms. Moritz has submitted the following evidence in support of her argument that Mr. Gordon is individually liable under the FDCPA:  Mr. Gordon requires all collectors to sign a memo stating that no one would leave a message for a debtor at a place of employment (3d Radbil Decl. Ex. C (Aylworth Dep. from *McLain v. Daniel N. Gordon, P.C.*) at 114:12-15:6); Mr. Gordon (along with other attorneys at DNG) drafts FDCPA compliance-related materials (*id.* Ex. D (Aylworth Dep. from *Mandelas v. Daniel N. Gordon, P.C.*) at 127:23-128:2); Mr. Gordon solicits new clients (2d Radbil Decl. Ex. 4 (Aylworth Dep. from *McLain v. Daniel N. Gordon, P.C.*) at 42:10-43:9; *id.* Ex. 2 (Nelson Aff.) ¶ 22); and Mr. Gordon convinces clients that he does not need to be licensed in Washington (*id.* Ex. 2 ¶ 22).[7]  (Resp. to Def. Mot. at 21-

_____

[7] Ms. Moritz also asserts that "the language of DNG's collection letters to consumers was drafted and approved by Gordon."  (Resp. to Def. Mot. at 22.)  The portion of the record to which she cites, however, does not support this assertion.  (*See* 2d Radbil Decl. Ex. 4 at 4-8.)  The court will not scour the record in an attempt to locate facts supporting Ms. Moritz's assertion.  *See Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995) ("a district court is

1    23.)  Ms. Moritz argues that these actions both directly and indirectly caused the alleged

2    violations at issue here.  (*Id.* at 22-23.)

3        Viewing the evidence in Ms. Moritz's favor, the court concludes that she has

4    failed to raise a genuine issue of material fact as to Mr. Gordon's liability for any of the

5    alleged FDCPA violations.  First, because Ms. Moritz does not allege or present evidence

6    that Mr. Gordon or DNG employees left improper messages for her at her place of

7    employment, the fact that Mr. Gordon drafted a policy forbidding employees from

8    leaving such messages is irrelevant to the instant lawsuit.  Second, even if Mr. Gordon

9    drafted FDCPA compliance-related materials, there is no evidence that he drafted any of

10   the policies that led to the alleged FDCPA violations here.  Third, Mr. Gordon's

11   solicitation of clients did not cause the allegedly improper voicemails, and is therefore

12   inapplicable to Ms. Moritz's § 1692d and § 1692e claims.  Finally, for the same reasons

13   discussed above with respect to Ms. Moritz's § 1692f claim against DNG, her parallel

14   claim against Mr. Gordon fails as a matter of law.  For these reasons, the court grants Mr.

15   Gordon's motion for summary judgment on all of Ms. Moritz's FDCPA claims against

16   him.

17      **2.  Washington Consumer Protection Act Claim Against DNG**

18        To prevail on a CPA claim, a plaintiff must establish five distinct elements:  "(1)

19   unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest

20

21   not required to scour the record [to look] for factual disputes [or] . . . to piece together
     appropriate arguments"); *Greenwood v. F.A.A.*, 28 F.3d 971, 977 (9th Cir.1994) ("Judges are not
22   like pigs, hunting for truffles buried in briefs." (citation omitted)).

ORDER- 20

impact; (4) injury to plaintiff in his or her business or property; [and] (5) causation."
*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 533 (Wash. 1986).  DNG's motion for summary judgment on Ms. Moritz's CPA claim primarily focuses on whether Ms. Moritz has presented evidence of an unfair or deceptive act or practice occurring in trade or commerce.  (Def. Mot. at 9-13.)  With respect to the remaining elements, DNG also contends that there is no evidence supporting Ms. Moritz's claim.  (*Id.* at 12-13; Reply to Def. Mot. at 7; Resp. to Moritz Mot. (Dkt. # 51) at 7-18.)  The court will address the elements of Ms. Moritz's CPA claim below.

### a.  Unfair or Deceptive Act or Practice Occurring in Trade or Commerce

A plaintiff may establish an unfair or deceptive act or practice occurring in trade or commerce for purposes of a CPA claim by proving certain violations of the WCAA. RCW 19.16.440; *Evergreen Collectors v. Holt*, 803 P.2d 10, 12-13 (Wash. Ct. App. 1991).  In particular, the WCAA states:

> The operation of a collection agency or out-of-state collection agency without a license as prohibited by RCW 19.16.110 and the commission by a licensee or an employee of a licensee of an act or practice prohibited by RCW 19.16.250 are declared to be unfair acts or practices or unfair methods of competition in the conduct of trade or commerce for the purpose of the application of the Consumer Protection Act found in chapter 19.86 RCW.

RCW 19.16.440.  Ms. Moritz's CPA claim is premised upon DNG's alleged violation of RCW 19.16.110, RCW 19.16.250(8), and RCW 19.16.260.  (Am. Compl. ¶¶ 96, 101, 103, 105.)  The court will begin by considering whether the undisputed evidence

ORDER- 21

1  establishes that DNG violated RCW 19.16.110 and then turn to Ms. Moritz's RCW

2  19.16.250 and RCW 19.16.260 claims.

3        RCW 19.16.110 provides in relevant part:  "No person shall act, assume to act, or

4  advertise as a collection agency or out-of-state collection agency as defined in this

5  chapter, except as authorized by this chapter, without first having applied for and

6  obtained a license from the director."  RCW 19.16.110.  Here, there is no dispute that

7  DNG is not licensed as a collection agency or out-of-state collection agency.  (Ans. ¶ 23.)

8  DNG argues that it is entitled to summary judgment on Ms. Moritz's CPA claim because

9  it is not required to be licensed under RCW 19.16.110.  (Def. Mot. at 9-13.)  In response,

10 Ms. Moritz contends that DNG qualifies as an out-of-state collection agency or, in the

11 alternative, a collection agency.  (Resp. to Def. Mot. at 12-21.)

12       Under the WCAA, the term "collection agency" includes "[a]ny person directly or

13 indirectly engaged in soliciting claims for collection, or collecting or attempting to collect

14 claims owed or due or asserted to be owed or due another person."  RCW

15 19.16.100(2)(a).  Excluded from this definition is an "out-of-state collection agency,"

16 which is defined in relevant part as "a person whose activities within this state are limited

17 to collecting debts from debtors located in this state by means of interstate

18 communications, including telephone, mail, or facsimile transmission, from the person's

19 location in another state on behalf of clients located outside of this state . . . ."[8]  RCW

20 19.16.100(3)(e), 19.16.100(4).  Also excluded from the definition of "collection agency"

21 

22     [8] There is one exception to the definition of "out-of-state collection agency," but it is not applicable here.  *See* RCW 19.16.100(4).

ORDER- 22

1   is "[a]ny person whose collection activities are carried on in his, her, or its true name and

2   are confined and are directly related to the operation of a business other than that of a

3   collection agency, such as but not limited to: . . . lawyers . . . ."  RCW 19.16.100(3)(c).

4       Here, the undisputed evidence establishes that DNG operated as an out-of-state

5   collection agency.  Both DNG and CACV are located outside of Washington.  (2d Radbil

6   Decl. Ex. 6 (DNG Resp. to Req. to Admit) ¶¶ 4, 5.)  At all times relevant to this lawsuit,

7   Ms. Moritz resided in Washington.  (*See, e.g.*, *id.* Exs. 9-14 (Letters Addressed to Ms.

8   Moritz in Washington).)  Additionally, DNG admits that it attempted to collect a debt

9   from Ms. Moritz (*id.* Ex. 6 ¶ 4), and the evidence before the court is that all of DNG's

10  actions taken to collect that debt—including initiating the action in Whatcom County,

11  obtaining the state court judgment, conducting garnishment proceedings, and

12  communicating with Ms. Moritz and others—occurred through interstate

13  communications from Oregon to Washington.  (*See, e.g.*, 1st Radbil Decl. Ex. A

14  (Interstate Communications Regarding Whatcom County Action); 2d Radbil Decl. Exs.

15  9-14 (Interstate Letters to Ms. Moritz).)  That some of DNG's debt collection activities

16  included litigation does not change the basic fact that all of DNG's activities were taken

17  in an attempt to collect the debt owed to CACV.

18      DNG makes four arguments in an attempt to avoid the conclusion that it acted as

19  an out-of-state collection agency.  First, DNG asserts that it is excluded from the

20  definition of an "out-of-state collection agency" because its "collection activities are

21  carried on in . . . its true name and are confined and are directly related to the operation of

22  a business other than that of a collection agency"—that is, a law firm.  (Resp. to Moritz.

ORDER- 23

1    Mot. at 8, 8 n.7 (citing RCW 19.16.100(3)(c)).)  Yet DNG's proposed statutory

2    construction is contrary to the plain meaning of the statute.  Out-of-state collection

3    agencies and some lawyers are both excluded from the definition of "collection agency,"

4    however the exclusion related to lawyers is not reiterated in the definition of "out-of-state

5    collection agency."  *See* RCW 19.16.100(3), (4).  If the legislature intended to exclude

6    law firms who qualify as out-of-state collection agencies from the licensing requirements

7    of the WCAA, it would have included such an exclusion in its definition of "out-of-state

8    collection agency."  Because it did not do so, the court declines to adopt DNG's proposed

9    construction of the statute.

10          Second, DNG argues that it does not fall within the definition of an "out-of-state

11   collection agency" because it is a law firm retained by clients to litigate disputes.  (Def.

12   Mot. at 11 n.6 (citing Aylworth Decl. ¶ 3).)  This general claim, however, does not

13   establish that DNG's activities in Washington reach beyond attempting to collect debts or

14   that DNG uses means other than interstate communications to do so.  Accordingly, it

15   does not create a genuine issue of fact regarding whether DNG is an out-of-state

16   collection agency for purposes of the WCAA.

17          Third, DNG asserts that lawyers engaged in the practice of law are not subject to

18   the WCAA because the statute prohibits licensees from "[p]erform[ing] any act or acts,

19   either directly or indirectly, constituting the practice of law."  RCW 19.16.250(5).  The

20   court has previously rejected this argument because "a plain reading of the narrow

21   exemption [in RCW 19.16.100(3)(c)] belies that assertion" and "if the legislature had

22   intended such a broad exemption, it could have included it."  *Mandelas v. Gordon*, 785 F.

ORDER- 24

1    Supp. 2d 951, 961 (W.D. Wash. 2011) (quoting *Lang v. Gordon*, No. C10-0819RSL,

2    2011 WL 62141, at *2 (W.D. Wash. Jan. 6, 2011)) (alteration in *Mandelas*).

3         Finally, DNG contends that it is not an out-of-state collection agency because it

4    "appeared before the Whatcom County District Court in the underlying collection case by

5    filing a complaint and pursuing it to judgment." (Resp. to Moritz Mot. at 8 n.7.)  As

6    such, DNG maintains, it did "much more to collect Ms. Moritz's debt than limiting itself

7    to the means of interstate communications." (*Id.*)  Yet in light of the evidence discussed

8    above that all of DNG's contacts with the Whatcom County District Court were achieved

9    by means of interstate communications via the United States mail, the court is not

10   persuaded that DNG's activities in Washington extended beyond attempting to collect

11   Ms. Moritz's debt by means of interstate communications.

12        In sum, the court concludes that the undisputed evidence submitted by the parties

13   establishes that DNG acted as an out-of-state collection agency without a license in

14   violation of RCW 19.16.110.  This violation establishes per se the first two elements of a

15   CPA claim as articulated in *Hangman Ridge*, 719 P.2d at 533.  *See* RCW 19.16.440.  As

16   such, the court denies DNG's motion for summary judgment on the issue of whether it

17   violated RCW 19.16.110.

18        As additional grounds for establishing an unfair or deceptive act or practice

19   occurring in trade or commerce, Ms. Moritz alleges that DNG violated RCW

20   19.16.250(8) and RCW 19.16.260.  (Am. Compl. ¶¶ 101, 103, 105.)  In support of its

21   motion for summary judgment, DNG contends that RCW 19.16.250(8) is inapplicable

22   because DNG is not a licensee under the WCAA, and there is no evidence in the record

1  that it violated RCW 19.16.260.  (Def. Mot. at 12-13.)  For the reasons described below,

2  the court agrees with DNG on both issues.

3      First, the plain language of the WCAA provides that RCW 19.16.250 applies to

4  "licensees," not "collection agencies" or "out-of-state collection agencies."[9]  RCW

5  19.16.250 ("No licensee or employee of a licensee shall . . . ."); RCW 19.16.440 ("[T]he

6  commission by a licensee or an employee of a licensee of an act or practice prohibited by

7  RCW 19.16.250 [is] declared to be [an] unfair act[] or practice[] . . . for the purpose of

8  the application of the [CPA].").  If the legislature had intended RCW 19.16.250 to apply

9  to unlicensed collection agencies and unlicensed out-of-state collection agencies, it could

10  have used such language in drafting the statute.  Here, it is undisputed that DNG is not

11  licensed under the WCAA, and therefore, although DNG may be held liable for acting as

12  an unlicensed out-of-state collection agency under RCW 19.16.110, the WCAA does not

13  provide for additional liability under RCW 19.16.250.

14      Second, Ms. Moritz makes no response to DNG's argument regarding RCW

15  19.16.260.  (*See generally* Resp. to Def. Mot.; Moritz Mot.; Reply to Moritz Mot.)  As

16  such, she has failed prevent summary judgment on this issue by presenting sufficient

17  evidence to create a genuine issue of material fact for trial.  Further, the WCAA does not

18  make a violation of RCW 19.16.260 a per se unfair act or practice or unfair method of

19  competition in the conduct of trade or commerce for the purposes of the CPA.  *See* RCW

20  19.16.440.  Thus even if Ms. Moritz had presented evidence that DNG violated RCW

21   

22      [9] The WCAA defines a "licensee" as "any person licensed under this chapter."  RCW 19.16.100(9).

1  19.16.260, she has not articulated why such a violation supports her CPA claim.  For

2  these reasons, the court grants summary judgment to DNG on the issues of whether it

3  violated RCW 19.16.250 and RCW 19.16.260.

4                    **b.  Public Interest Impact**

5        The public interest element of a CPA claim may be satisfied in several ways.  *See*

6  *Hangman Ridge*, 719 P.3d at 536-39.  In certain situations, the public interest element is

7  satisfied per se by a showing of conduct in violation of a statute containing a specific

8  legislative declaration of public interest impact.  *Id.* at 538; *Stephens v. Omni Ins. Co.*,

9  159 P.3d 10, 24 (Wash. Ct. App. 2007), *aff'd sub nom Panag v. Farmers Ins. Co. of*

10  *Wash.*, 204 P.3d 885 (Wash. 2009).  The WCAA, however, does not contain the required

11  declaration of public interest impact.[10]  "Whether the public has an interest is therefore an

12  issue to be determined by the trier of fact."  *Stephens*, 159 P.3d at 24; *see also Behnke v.*

13  *Ahrens*, 280 P.3d 496, 503 (Wash. Ct. App. 2012).

14        DNG nevertheless contends that it is entitled to summary judgment on Ms.

15  Moritz's CPA claim because she has presented no evidence related to any public interest

16  impact.  (Def. Mot. at 12-13; Reply to Def. Mot. at 7; Resp. to Moritz Mot. at 16.)  The

17  court disagrees.  Where a complaint involves "essentially a private dispute" the following

18  factors are relevant to whether there is a public interest impact:

19

20        [10] Ms. Moritz incorrectly argues that establishing a violation of the WCAA establishes

21  the public interest element per se.  (*See* Moritz Mot. at 20; Reply to Moritz Mot. at 11-12.)
   Although the CPA provides that an unfair or deceptive act or practice is per se injurious to the
   public when it "[v]iolates a statute that incorporates this chapter . . . ," RCW 19.86.093, the

22  WCAA does not incorporate the CPA; it merely references the CPA, *see* RCW 19.16.440.

1    (1) Were the alleged acts committed in the course of defendant's business?
(2) Did defendant advertise to the public in general?  (3) Did defendant
2 actively solicit this particular plaintiff, indicating potential solicitation of
others?    (4) Did plaintiff and defendant occupy unequal bargaining
3 positions?

4 *Stephens*, 159 P.3d at 24 (quoting *Hangman Ridge*, 719 P.2d at 538).  "[I]t is the

5 likelihood that additional plaintiffs have been or will be injured in exactly the same

6 fashion that changes a factual pattern from a private dispute to one that affects the public

7 interest."  *Hangman Ridge*, 719 P.2d at 538.  Here, Ms. Moritz has directed the court's

8 attention to the matter of *Snyder v. Daniel N. Gordon, P.C.*, No. C11-1379RAJ, which is

9 currently pending before another court in the Western District of Washington.  (Reply to

10 Moritz Mot. at 12.)  In *Snyder*, the court recently denied DNG's motion for summary

11 judgment on the question of whether it violated the WCAA by collecting debts without a

12 license and concluded that DNG had violated the statute.  2012 WL 3643673, at *6-*7

13 (W.D. Wash. Aug. 24, 2012).  Additional evidence in the record further supports a

14 conclusion that that DNG likely attempted to collect debts from other persons in violation

15 of the WCAA.  (*See, e.g.*, 2d Radbil Decl. Ex. 15 (Nelson Dep. in *McLain v. Daniel N.*

16 *Gordon, P.C.*) at 37:8-10.)  This evidence creates a triable fact regarding whether DNG's

17 violation of the WCAA affects the public interest.  Accordingly, the court denies DNG's

18 motion for summary judgment on the issue of public interest impact.

19     **c.  Injury to Business or Property Caused by Violation of WCAA**

20    The final elements of a CPA claim are that the defendant's conduct caused injury

21 to the plaintiff in his or her business or property.  "The injury involved need not be great,

22 but it must be established."  *Hangman Ridge*, 719 P.2d at 539.  Because the injury must

ORDER- 28

1   be to the plaintiff's "business or property," "[p]ersonal injuries are not compensable

2   damages under the CPA." *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*,

3   858 P.2d 1054, 1064 (Wash. 1993).  Specifically, pain and suffering and emotional

4   distress damages are not compensable CPA injuries.  *White River Estates v. Hiltbruner*,

5   953 P.2d 796, 797 n.1 (Wash. 1998).  Further, the Washington Supreme Court has

6   explained:

7       [N]o monetary damages need be proven, and . . . nonquantifiable injuries,
        such as loss of goodwill would suffice for this element . . . .  A loss of use
8       of property which is causally related to an unfair or deceptive act or
        practice is sufficient injury to constitute the fourth element of a Consumer
9       Protection Act violation.  The injury element will be met if the consumer's
        property interest or money is diminished because of the unlawful conduct
10      even if the expenses caused by the statutory violation are minimal.

11  *Mason v. Mortgage Am., Inc.*, 792 P.2d 142, 148 (Wash. 1990) (internal citations

12  omitted).  "To establish the causation element in a CPA claim, a plaintiff must show that,

13  but for the defendant's unfair or deceptive practice, the plaintiff would not have suffered

14  an injury."  *Carlile v. Harbour Homes, Inc.*, 194 P.3d 280, 290 (Wash Ct. App. 2008)

15  (citing *Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc.*, 170 P.3d 10, 22

16  (Wash. 2007)).

17      The basis for DNG's summary judgment motion with respect to the elements of

18  injury and causation is that Ms. Moritz has submitted no evidence in support these

19  elements.  (Def. Mot. at 12-13; Reply to Def. Mot. at 7.)  Ms. Moritz, however, has

20  submitted evidence that she incurred a postage charge of $7.75 for sending a letter to

21

22

1    DNG via certified mail as a result of DNG's unlicensed collection activities.[11]  (Moritz

2    Aff. ¶¶ 2-4, Ex. 2; 2d Radbil Decl. Ex. 5 (Moritz Dep.) at 51:13-52:7.)  DNG responds

3    that Ms. Moritz cannot claim such injury when she was unable to identify her damages or

4    her injury in her deposition.  (Resp. to Moritz Mot. at 16-17.)  Yet contrary to DNG's

5    assertions, evidence of Ms. Moritz's postage charges does not directly contradict the

6    deposition testimony to which DNG cites, and the court will consider it in ruling on the

7    cross-motions for summary judgment.  (*Compare* 2d Kraemer Decl. (Dkt. # 52) Ex. 1

8    (Moritz Dep.) at 72:8-73:17, *with* Moritz Aff. ¶¶ 2-4, Ex. 2.)  Thus taking Ms. Moritz's

9    evidence into account, the court concludes that Ms. Moritz has presented evidence of an

10   injury that was caused by DNG's unlicensed collection activity, and that summary

11   judgment in DNG's favor on this issue is improper.

12   **C. Ms. Moritz's Motion for Partial Summary Judgment**

13           **1.  Fair Debt Collection Practices Act Claims Against DNG**

14           Ms. Moritz moves for summary judgment on her claims against DNG under §

15   1692d(6) and § 1692e(11) of the FDCPA.  (Moritz Mot. at 9-13.)  The parties present the

16   same arguments and evidence as they did in support of and opposition to DNG's motion

17   for summary judgment on these issues.  Viewing this evidence in DNG's favor, the court

18   concludes that there are genuine issues of material fact that preclude summary judgment

19   on these claims for the same reasons articulated above with respect to DNG's motion for

20

21   _____

22           [11] Ms. Moritz also contends that DNG's conduct caused her emotional distress, worry and
     embarrassment.  (Moritz Mot. at 21.)  Such damages, however, are not compensable under the
     CPA.  *White River Estates*, 953 P.2d at 797 n.1.

1   summary judgment.  Accordingly, the court denies Ms. Moritz's motion for partial

2   summary judgment with respect to her FDCPA claims against DNG.

3       **2.  Washington Consumer Protection Act Claim Against DNG**

4       Ms. Moritz also moves for summary judgment on her CPA claim against DNG.

5   (Moritz Mot. at 13-23.)  For the same reasons articulated above with respect to DNG's

6   motion for summary judgment, the court concludes that Ms. Moritz has established that

7   DNG violated the WCAA by acting as an unlicensed out-of-state collection agency, but

8   that Ms. Moritz has failed to establish that DNG violated RCW 19.16.250(8).  The court

9   further concludes, for the same reasons stated above, that DNG's violation of the WCAA

10  does not impact the public interest per se, but that Ms. Moritz has presented sufficient

11  evidence of an identical injury to others to bring the issue before a trier of fact.  Finally,

12  with respect to the injury and causation elements, the court concluded above that Ms.

13  Moritz presented undisputed evidence that she incurred a $7.75 postage fee as a result of

14  DNG's unlicensed collection activities.  This conclusion applies equally with respect to

15  Ms. Moritz's motion for partial summary judgment.

16      The court must address one further issue, however, with respect to Ms. Moritz's

17  alleged injury.  She contends that she is entitled to damages in the amount she remitted to

18  DNG in payment of the underlying debt owed to CACV because DNG's collection

19  efforts were unlawful given that it lacked the requisite license.  (Moritz Mot. at 22-23;

20  *see also* Am. Compl. ¶ 108.)  Ms. Moritz asserts that she paid DNG $2,250.00 to satisfy

21  the underlying debt, and DNG does not dispute this fact.  (Moritz Mot. at 23 (citing 2d

22  Radbil Decl. Ex. 3 (Aylworth Dep.) at 134:10-135:1; Moritz Aff. ¶ 10).)  This amount

was less than the total amount of principal and interest that Ms. Moritz owed CACV on

the underlying debt.  (*See* Am. Compl. ¶ 25.)

The court has been unable to locate a Washington State CPA case that addresses

whether a plaintiff who pays a valid debt in response to unlawful collection activities is

injured in the amount paid, nor has Ms. Moritz cited any.  Rather, Ms. Moritz relies on

the proposition from *Mason* quoted above that "[a] loss of use of property which is

causally related to an unfair or deceptive act or practice is sufficient injury to constitute

the fourth element of a [CPA] violation."  (Moritz Mot. at 22 (quoting *Mason*, 792 P.2d

at 148).)  In *Mason*, the purchasers of a mobile home brought an action against the seller

and lender to recover for breach of contract and violation of the CPA.  792 P.2d at 143.

Even though the agreement between the purchasers and the lender provided that the

purchasers would grant a deed of trust to secure their obligation to the lender, the lender

had them sign over their real property by way of a quitclaim deed.  *Id.* at 144.  With

respect to the fourth element of a CPA violation, the court reasoned that even setting

aside the actual monetary damage caused by the defendants' breaches of their contracts

with the purchasers, the purchasers would have been able to establish injury to their

property given their loss of title to their real property.  *Id.* at 149.  The court consequently

concluded that notwithstanding the actual damage award, the purchasers would have been

entitled to reasonable attorneys' fees and costs under the CPA.  *Id.*

Although *Mason* provides guidance regarding when a party may be injured within

the meaning of the CPA, it does not establish that loss of use of property results in actual

damages under the statute.  Indeed, there is no indication in the *Mason* opinion that the

1    court awarded actual damages for the purchasers' temporary loss of title.  Furthermore,

2    even if the court had awarded such damages, *Mason* does not dictate that the same result

3    is appropriate here because there is no dispute that Ms. Moritz owed CACV the amounts

4    collected, whereas the lender in *Mason* acquired the purchasers' property in

5    contravention of their agreement.  Accordingly, *Mason* does not support Ms. Moritz's

6    contention that she is entitled to a return of the amounts paid to DNG to settle her debt to

7    CACV.

8        Ms. Moritz also relies on *Hamid v. Stock & Grimes*, --- F. Supp. 2d -----, 2012 WL

9    2740869 (E.D. Pa. Jul. 9, 2012).  (Moritz Mot. at 22-23.)  In *Hamid*, the court agreed

10   with the plaintiff that the defendant violated the FDCPA by filing an underlying debt

11   collection action against her when the action was barred by the applicable statute of

12   limitations.  *Id.* at *1.  With respect to damages, the plaintiff argued that she should be

13   able to recover as actual damages the amounts she paid to the defendant to settle the state

14   court action.  *Id.*  The court denied the defendant's motion *in limine* and concluded that

15   the plaintiff could present evidence to the jury of the amount she paid to settle the state

16   court action.  *Id.* at *3.  The court reasoned:  "It is clear from its underlying purpose that

17   debtors may recover for violations of the FDCPA even if they have defaulted on a debt.

18   It follows that debtors may recover the amount paid to settle a debt, if the debt collector

19   violated the FDCPA in making the collection, as occurred here."  *Id.* at *2.

20       *Hamid* is distinguishable from the instant dispute because no statute of limitations

21   barred CACV's state court action against Ms. Moritz.  Indeed, there is no argument here

22   that CACV could not collect the debt owed from Ms. Moritz; the only issue is whether

1    DNG violated Washington law in doing so.  Other courts have found that plaintiffs are

2    not injured in the amount collected when the plaintiff owed the debt even where the debt

3    collector violated state law in doing so.  *See Gray v. Suttell & Assocs.*, No. CV-09-251-

4    EFS, 2012 WL 1067962, at *6 (E.D. Wash. Mar. 28, 2012) ("To the extent that Mr. Scott

5    alleges an injury as a result of the garnished amount [of the debt he owed] based solely

6    on the underlying debt and interest thereon, Mr. Scott fails to allege an injury to his

7    business or property [for the purposes of his CPA claim]."); *Flores v. The Rawlings Co.,*

8    *LLC*, 177 P.3d 341, 358 (Haw. 2008) (finding that although the defendant's collection

9    activities might have violated state statutes, the plaintiffs were not injured by paying the

10   underlying debt because the debt was valid); *Camacho v. Auto. Club of S. Cal.*, 142 Cal.

11   App. 4th 1394, 1405 (2006) (finding that the plaintiff could not establish an injury from

12   the allegedly unfair collection practice where he conceded liability and owed the amounts

13   that were collected).  Based on these cases, the court concludes that Ms. Moritz cannot

14   recover the amounts she paid to DNG because those amounts were less than the total

15   amount she owed to CACV on a valid debt.  In sum, the court grants in part and denies in

16   part Ms. Moritz's motion for summary judgment with respect to her CPA claim against

17   DNG.

18   \\

19   \\

20   \\

21   \\

22   \\

1

## IV.   CONCLUSION

2          For the foregoing reasons, the court GRANTS in part and DENIES in part

3   Defendants' motion for summary judgment (Dkt. # 42), GRANTS in part and DENIES in

4   part Ms. Moritz's motion for partial summary judgment (Dkt. # 45), and DENIES as

5   MOOT Ms. Moritz's motion for leave to file supplemental authority (Dkt. # 60).

6          Dated this 11th day of September, 2012.

7

8

9          _____
            JAMES L. ROBART
10          United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

ORDER- 35